<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

|                          |   |                               |
|--------------------------|---|-------------------------------|
| RALPH M. LEPISCOPO,      | : |                               |
|                          | : | Civil Action No. 06-3207 (MLC) |
|             Plaintiff,   | : |                               |
|                          | : | <u>OPINION</u>                |
|          v.              | : |                               |
|                          | : |                               |
| PETER C. HARVEY, et al., | : |                               |
|                          | : |                               |
|             Defendants.  | : |                               |

---

**APPEARANCES:**

> RALPH M. LEPISCOPO, #265444, Plaintiff <u>Pro Se</u>
> New Jersey State Prison, P.O. Box 861
> Trenton, New Jersey  08625-0861

**COOPER,** District Judge

Plaintiff, a prisoner incarcerated at New Jersey State Prison ("NJSP"), submitted to the Clerk for filing a civil rights Complaint and application to proceed <u>in forma pauperis</u>. This Court (1) grants Plaintiff's application to proceed <u>in forma pauperis</u>; (2) directs the Clerk to file the Complaint without pre-payment of the filing fee; (3) assesses the $350.00 filing fee against Plaintiff; (4) directs the New Jersey Department of Corrections ("NJDOC") to forward an initial partial filing fee payment to the Clerk, when funds exist; and (5) directs the NJDOC to forward payments from Plaintiff's prison account to the Clerk each subsequent month that the amount in the account exceeds $10.00, until the $350.00 filing fee is paid in full. <u>See</u> 28 U.S.C. § 1915(a), (b). Having thoroughly reviewed Plaintiff's

allegations, as required by 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the Court dismisses the federal claims raised in the Complaint for failure to state a claim upon which relief may be granted and declines to exercise supplemental jurisdiction over claims arising under state law.

## I.  BACKGROUND

Plaintiff is a New Mexico-sentenced inmate who in 1994 was transferred to New Jersey under the Interstate Corrections Compact.  Plaintiff asserts that upon his transfer, New Jersey officials immediately, and without a hearing, placed him in the Management Control Unit ("MCU").  He alleges that a hearing was later conducted and a committee recommended that he be classified to MCU, but no reasons were provided.  Plaintiff asserts that the committee's classification decision was affirmed by the then warden, and that Plaintiff has been continuously confined in MCU since 1994.  He contends that confinement in MCU violates due process, and seeks an order directing Defendants to move him out of MCU and awarding damages.

Plaintiff further asserts that in 1997 the New Jersey legislature enacted a law imposing a 10% surcharge on inmates' commissary purchases to compensate crime victims.  Plaintiff complains that the surcharge was illegally imposed on his commissary purchases because he has not been convicted of any New Jersey crime.  Plaintiff seeks an order directing Defendants

to reimburse the money charged against his account as a VCCB surcharge, plus interest.

Plaintiff also alleges that prison officials removed priceless artwork and photographs from his cell without providing a receipt or confiscation form.  Plaintiff seeks damages and appropriate relief.

## II.  STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA") requires the Court, before docketing or as soon as practicable thereafter, to review a complaint in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The Court must sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

A pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 328 (1989); see Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear

that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Soreman, 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004).

### III.  DISCUSSION

Federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).  A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; see 28 U.S.C. § 1331.

42 U.S.C. § 1983 authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  To recover under 42 U.S.C. § 1983, a plaintiff must show:  (1) a person deprived him or caused him to be deprived of a right secured by the federal Constitution or laws, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

A.   MCU

Plaintiff challenges his confinement in MCU since 1994.  The Court construes the allegations regarding MCU as attempting to assert a procedural due process claim.  The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides:  "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  To analyze a procedural due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process.  See Fuentes v. Shevin, 407 U.S. 67 (1972).  Only if the answer is yes, is the second step, determining what process is due, necessary.  See Morrissey v. Brewer, 408 U.S. 471 (1972).

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under that clause itself or be created by mandatory language in state statutes or regulations. See Sandin v. Conner, 515 U.S. 472, 483-484 (1995).  But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Id. at 478.  "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye

5

v. Haymes, 427 U.S. 236, 242 (1976); see Vitek v. Jones, 445 U.S. 480, 493 (1980).  A convicted inmate such as Plaintiff has no liberty interest arising by force of the Due Process Clause itself in remaining in the general population.  See Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983); Montanye, 427 U.S. at 242; Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002).

The state may create a protected liberty interest through a statute or regulation requiring placement in the general population under certain circumstances.[1]  See Sandin, 515 U.S. at 483-84.  In Sandin v. Conner, the United States Supreme Court announced that "mandatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"

---

[1] New Jersey regulations do not require placement in general population.  Rather regulations require officials to place an inmate in MCU under certain circumstances:

(a) An inmate shall be assigned to the M.C.U. when the [committee], after considering the criteria in N.J.A.C. 10A:5-2.4, concludes that the inmate poses a substantial threat:
    1. To the safety of others;
    2. Of damage to or destruction of property; or
    3. Of interrupting the operation of a State correctional facility.
(b) Procedures for [committee] hearings described in N.J.A.C. 10A:5-2.6 shall be followed and completed prior to placement in M.C.U.
(c) If there is a need for immediate placement in the M.C.U., such placement shall be made in accordance with N.J.A.C. 10A:5-2.8.

N.J. Admin. Code § 10A:5-2.5.

6

Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002) (quoting Sandin, 515 U.S. at 484).  But "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest."  Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); see Fraise v. Terhune, 283 F.3d 506, 522-523 (3d Cir. 2002) (New Jersey prisoners have no protected liberty interest in being free of indefinite segregated confinement in Security Threat Group Management Unit).  Thus, Plaintiff's confinement in MCU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life in New Jersey, and Plaintiff has no state created liberty interest in avoiding such confinement.

B.  Artwork and Photographs

    Plaintiff contends that Defendants confiscated artwork and photographs from his cell.  Although Plaintiff has a property interest in his artwork and photographs, his due process claim nevertheless fails as a matter of law because the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1-1 et seq., provides all the process that is due.  The NJTCA provides an adequate post-deprivation judicial remedy to persons, including inmates such as Plaintiff, who believe they were wrongfully deprived of property by prison officials.  See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Vols. of Am., 1 F.Supp.2d 405, 419 (D.N.J.

7

1998), <u>aff'd</u> 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA is
an available remedy providing all the process which is due,
Plaintiff's due process claim regarding the confiscation of
property fails.[2]

## C.  VCCB Surcharge

Plaintiff challenges the imposition of a 10% Victims of
Crime Compensation Board ("VCCB") surcharge on his commissary
purchases since 1998, <u>see</u> N.J. Stat. Ann. § 30:4-15.1, as an
"illegal debt."  (Compl. p. 4.)  Specifically, he asserts:

> Public Law 1997, Chapter 396 (S2082) is an illegal debt
> imposed upon Plaintiff.  Plaintiff is an out of State
> prisoner with no New Jersey sentences or fines and is
> immune from the "Commissary Surcharge."  The New Jersey
> Senate's "FISCAL NOTE TO" Public Law, 1997, dated,
> December 17, 1997, is right on target:  "... Every
> defendant found guilty of a criminal offense is required
> to pay an assessment to the . . . VCCB. . ."  Not all of
> the imposed assessments are paid ("although every
> defendant is assessed a penalty").

> Plaintiff is not a New Jersey "defendant."  The State
> Senate and Department of Corrections have been operating
> under the erroneous assumption that they could
> unilaterally assume the rose of a sentencing Judge, by
> creating an additional fine for prisoners who owe VCCB
> assessments, and a fine for cases which fall outside the
> VCCB Law.  Simple, yet flagrant, violations of New
> Jersey law.  They changed the VCCB scheme within what
> they felt to be proper to collect assessments.  All
> monies taken from the Plaintiff from September, 1998, to
> the present must be returned with interest.

(Compl. pp. 4-5.)

---

[2] To the extent that Plaintiff seeks to assert claims
arising under state law, the Court declines to exercise
supplemental jurisdiction over these claims.  28 U.S.C. §
1367(c)(3); <u>Growth Horizons, Inc. v. Del. County, Pa.</u>, 983 F.2d
1277, 1284-85 (3d Cir. 1993).

New Jersey law imposes a 10% VCCB surcharge on every item sold in a prison commissary in lieu of a sales tax.  It provides:

> Every commissary in a county or State correctional facility operated for the sale of commodities shall collect a surcharge of 10% of the sales price of every item sold. The surcharge shall be known as the "VCCB Surcharge." All funds collected pursuant to this section shall be forwarded to the State Treasurer for deposit in the Victims of Crime Compensation Board Account, shall be subject to reporting and accounting procedures pursuant to the provisions of section 2 of P.L. 1979, c. 396 (C.2C:43:3.l) and shall be used in satisfying claims pursuant to the provisions of the "Criminal Injuries Compensation Act of 1971," P.L. 1971, c. 317 (C.52:4B-1 et seq.). A sale subject to surcharge under this section shall not be subject to any tax imposed under the "Sales and Use Tax Act," P.L. 966, c. 30 (C.54:32B-1 et seq.).

N.J.S.A. § 30:4-15.1.

Plaintiff's constitutional challenge to the VCCB surcharge is governed by Myrie v. Commissioner, N.J. Dept. of Corrections, 267 F.3d 251 (3d Cir. 2001).  Myrie upheld the constitutionality of the VCCB surcharge, rejecting inmates' claims under the Double Jeopardy Clause, Ex Post Facto Clause, Due Process Clause, and Equal Protection Clause.  The Court ruled that the VCCB surcharge is a civil remedial program designed to generate funds to help New Jersey compensate crime victims, not a program designed to add further punishment to incarcerated persons.  Id. at 258.  The Third Circuit noted that

> the New Jersey inmate population presumably included - and continues to include - persons held in pre-trial custody, not convicted of any crimes.  But this lack of one-to-one correspondence between a particular inmate's purchase and an identifiable and precisely quantifiable dollar obligation to a victim does not undercut the

general rationality of the attribution of accountability which, we assume, animated the Legislature.  More to the point, it does not undercut the conclusion that the surcharge regime was intended by the Legislature to be civil and remedial."  <u>Id.</u> at 259.  The Third Circuit also rejected the claim that the surcharge imposed an "excessive fine," prohibited by the Eighth Amendment or violates Due Process or Equal Protection.

<u>Id.</u> at 261-64.  Thus, the imposition of a VCCB surcharge on commissary purchases does not violate Plaintiff's constitutional rights.

D.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." <u>Wisc. Dep't of Corrs. v. Schacht</u>, 524 U.S. 381, 387 (1998) (cites and quotes omitted).  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the court may decline to exercise supplemental jurisdiction if all claims over which there was original jurisdiction are dismissed.  28 U.S.C. § 1367(c)(3).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966); <u>Growth Horizons, Inc.</u>, 983 F.2d at 1284-85.

The Court here is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation, and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  See 28 U.S.C. § 1367(c)(3).

### IV. CONCLUSION

The Court grants Plaintiff's application to proceed in forma pauperis, dismisses the federal claims raised in the Complaint for failure to state a claim upon which relief may be granted, and declines to exercise supplemental jurisdiction over claims arising under state law.  The Court will issue an appropriate order.


    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

11